1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

JOHN EDWARD BETTYS,

7                                  Plaintiff,

8          v.

9    STATE OF WASHINGTON, et al.,

10                                 Defendants.

Case No. 3:23-cv-05838-BJR-TLF

REPORT AND
RECOMMENDATION

Noted for   August 15, 2024

11          The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to

12   United States Magistrate Theresa L. Fricke. Plaintiff John Edward Bettys, a civilly

13   committed detainee at the Special Commitment Center ("SCC") proceeding *pro se*, filed

14   this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the

15   Rehabilitation Act.[1] Dkts. 1-1, 30. Currently pending before the Court is defendants'

16   motion to dismiss plaintiff's complaint. Dkt. 33. For the reasons discussed below, the

17   Court recommends the motion (Dkt. 33) be GRANTED in part and DENIED in part.

18   //

19   //

20

21   _____

[1] The Court notes that plaintiff refers to "state law" a few times in the body of his complaint. To the extent plaintiff intends to raise state law claims in his complaint he does not clearly or adequately identify those claims, nor does he allege sufficient facts to support such claims. Accordingly, the plaintiff's complaint as currently pled does not raise any specific claims under state law. If plaintiff intends to file an amended complaint to cure deficiencies the Court identifies below and for which it has recommended leave to amend, he may also clarify in the proposed amended complaint whether he alleges any *related* state law claims.

25

REPORT AND RECOMMENDATION - 1

BACKGROUND

Plaintiff's complaint asserts claims against the following defendants: the State of Washington, Washington State Department of Social and Health Services (DSHS), Jilma Meneses (Secretary of DSHS), Keith Devos (CEO, SCC), Shawn Candella (Deputy CEO, SCC), Tabitha Yockey (Chief of Residential Secure Operations, SCC), Al Nerio (Resident Program Director of Program Area-1, SCC), Calvin Guien (Resident Program Director of Program Area-3, SCC), Deborah Havens (Medical Doctor, SCC), Casey Anderson (RN, SCC), Megan Reese (Director of Sex Offender Treatment, SCC) Whitney VanVleet (Sex Offender Treatment Therapist, SCC), Jennie Wilsonbeard (CPA, SCC), Tim Whitehouse (Food Services Manager, SCC), Damien Lowe (Resident Rehabilitation Counselor 4, SCC), and Mark McFarlane (Resident Safety Officer, SCC). Plaintiff brings claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the Rehabilitation Act 29 U.S.C. § 701 et seq. ("RA"), and the First and Fourteenth Amendments to the United States Constitution.

With respect to each claim below (Claims One through Six) plaintiff brings his claims against the named non-entity/individual defendants in both their individual and official capacities. Dkt. 30 at 13-37.

Specifically, in Claim One, plaintiff asserts defendants McFarlane, Candella, Yockey, Guien, Havens, Anderson, Lowe, the State of Washington, and DSHS, violated his ADA and RA rights by depriving him of ADA-compliant living facilities and/or failed to provide assistance required by plaintiff in the absence of such facilities when he was moved to a different living area (Program Area One) from November to December 2022 and July 2023 through the filing of his complaint. Dkt. 30 at 13-16.

Plaintiff alleges he weighs 395 pounds and suffers from multiple disabling medical conditions including a broken foot, lower back injury, failing knee joints, heart condition, diabetic nerve damage in hands, legs, and feet, has thin skin with vein issues in feet and legs, and "walks with mobility ADA device." *Id.* Plaintiff alleges Program Area One lacks ADA compliant showers, toilets, doors, and a desktop computer keyboard. *Id.*

In Claim Two, plaintiff asserts defendants Meneses, Devos, Candella, Yockey, Nerio, Guien, Anderson[2], and Havens, violated his Fourteenth Amendment rights through the "over-administration" of the "civil law scheme" established under Revised Code of Washington (RCW) 71.09.[3] Dkt. 30 at 17-28.

Plaintiff alleges defendants violated his rights by:

(1) Enacting and implementing a policy that limits plaintiff's ability to order packages to a specific number of packages. *Id.*

(2) Enacting and implementing a policy that limits plaintiff's ability to smoke cigarettes. *Id.*

(3) Enacting and implementing a policy that removes plaintiff's ability to purchase video game consoles. *Id.*

(4) Enacting and implementing a policy that removes the right to hold fundraisers. *Id.*

(5) Enacting and implementing a policy that removes the ability to seek exceptions to vendor guidelines for items. *Id.*

---

[2] The Court notes that plaintiff does not identify defendant Anderson by name in Claim Two, but that in the section identifying her as a defendant, it appears clear he is alleging she violated his rights in Claim Two by failing to provide him proper medical care. *See* Dkt. 30 at 6.

[3] RCW 71.09 is the statutory scheme in Washington State that governs involuntary civil commitment for individuals deemed sexually violent predators. *See In re Det. Of Lewis*, 163 Wn.2d 188, 192 (2008).

(6) Enacting and implementing a policy that removes the ability to "inner library loan legal materials." *Id.* Plaintiff appears to allege this policy also violates the First Amendment. *Id.*

(7) Enacting and implementing a policy that removes the ability to send out funds exceeding $350.00 without disclosure of intention and purpose including the name of the person receiving the funds. *Id.*

(8) Enacting and implementing a policy that removes the ability to hold hobby craft sales. *Id.* Plaintiff alleges defendant Wilsonbeard refused to process funds to plaintiff's account from staff members for hobby items because she requires plaintiff to obtain a business license first to ensure taxes are being paid. *Id.*

(9) Enacting and implementing a policy that removes the ability to operate a business from SCC. *Id.*

(10)    Enacting and implementing a policy that removes or severely limits plaintiff's ability to seek or obtain medical care. *Id.* Plaintiff alleges defendant Candella directed in writing that plaintiff must meet weekly with a nurse[4] who must fully document all of plaintiff's medical needs, injuries, pain and suffering to be given to the doctor employed at the SCC "for care provision." *Id.* Plaintiff alleges the doctor, to date, has never provided follow up care. *Id.* He alleges he has been left in daily pain and suffering with multiple medical issues going unaddressed. *Id.* He alleges defendant Havens is the doctor employed at SCC to provide medical care and that she is being notified of plaintiff's dangerous

---

[4] The Court construes plaintiff's allegations with respect to the nurse here to be referring to defendant Anderson.

REPORT AND RECOMMENDATION - 4

medical conditions but has never seen plaintiff in person to address his issues. *Id.*

(11)     Enacting and implementing a policy that removes the ability to order or receive packages through friends and family from Walmart and Amazon. *Id.* Plaintiff alleges the facility supported vendors plaintiff is allowed to order through charge more for the items, the items take longer to arrive and are of poorer quality. *Id.* Plaintiff also alleges that this policy has been enacted or implemented to retaliate against him for having supportive family and friends. *Id.*

(12)     Enacting and implementing a policy that removes the ability to create a bank account. *Id.* Plaintiff alleges that holding plaintiff's funds in their banking system internally deprives plaintiff of the ability to accrue interest on his accounts. *Id.* Plaintiff also alleges he has notified defendant Wilsonbeard that his account has had multiple errors in beginning and ending balances resulting in loss of funds and that no action has been taken. *Id.*

In Claim Three, plaintiff alleges defendants Candella, Yockey, Whitehouse, Guien, Nerio, Wilsonbeard, and Devos, violated the Fourteenth Amendment and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et. Seq. Dkt. 30 at 28-31. Plaintiff alleges the FLSA established the right to minimum wages for work performed at the civil confinement facility during civil confinement under RCW 71.09. *Id.* Plaintiff alleges Washington State attempted to circumvent the federal law by requiring a lower wage for civil detainees. *Id.* Plaintiff alleges defendant Devos signed into effect a new policy, memorandum or standard operating procedure establishing a resident wage of $3.10

per hour in violation of federal statutes setting the federal minimum wage level at $7.25 per hour. *Id.*

Plaintiff alleges other civilly confined individuals "labeled patients, residents, and offenders" in the State of Washington held at "both Eastern and Western State Hospitals [(WSH)], Sea Tac Immigration Detention Facilities, at Seattle SCTF[5], at Pierce County SCTF, and in community residential housing are provided minimum wage rights." *Id.*

In Claim Four, plaintiff alleges defendants Devos, Yockey, Nerio, Guien, Reese and VanVleet deliberately violated his First Amendment right to view non-sexual media items after Defendant Devos "signed into effect a policy, procedure, or memorandum" that "limits plaintiff's ability to seek or obtain non-sexual media items." Dkt. 30 at 31-33. Plaintiff alleges defendants Yockey, Nerio, and Guien have supported defendant Reese and defendant VanVleet in denying access to protected literary works of art without sexual content. *Id.* He alleges the policy bars possession, purchase, and ownership of any material that is sexually stimulating. *Id.*

Plaintiff asserts defendants have denied access to movies, books, and materials with ratings of G, PG, and PG-13 with no pornographic or sexually stimulating material, including movies "like" Beethoven, Never Ending Story, Parent Trap, Parent Trap-2, and "Angels in the end field[.]" *Id.* Plaintiff also alleges an "imprecise policy that prohibits access to Nobokov's 'Lolita' or Woody Allen's 'Manhattan Project' will not survive constitutional scrutiny even if it also bans access to actual hardcore images of underage victims." *Id.* Plaintiff alleges that the policy bars shows such as Game of Thrones, and

---

[5] Plaintiff appears to be referring to the Secure Community Transition Facility (SCTF).

that defendants have prevented plaintiff from seeing or owning films like "broke back mountain", "american beauty", "the wire" or sexually explicit works of art that appear in national museums. *Id.*

In Claim Five, plaintiff alleges defendants Guien, Yockey and VanVleet retaliated against him in violation of the First Amendment by moving him to the Program Area One living unit which is high management disciplinary housing. Dkt. 33 at 33-36. Plaintiff alleges defendant Guien contacted defendant VanVleet in May of 2023 asking how they could work together to get plaintiff moved from Program Area Three to Program Area One because he did not want plaintiff on his living unit. *Id.* Plaintiff alleges defendants Guien and VanVleet were aware of plaintiff's medical condition and the ADA type accommodations he had in Program Area Three but conspired to create documentation to support moving plaintiff to Program Area One. *Id.*

Plaintiff alleges defendants Guien and VanVleet convinced civil detainee Robinson to make unsupportable allegations against plaintiff on official record so that they could move plaintiff to the "punishment" Program Area One living unit. *Id.* Plaintiff alleges he was moved based on a Behavioral Management Report alleging plaintiff committed violations of facility policy "as alleged by another patient who claimed to Defendant VanVleet in Plaintiff's presence that a specific staff sent him after Plaintiff." *Id.* Plaintiff contends the allegations in the Behavioral Management Report were untrue and that it was ultimately dismissed. *Id.*

Plaintiff alleges defendant VanVleet imposed a restricted contact condition with the staff member and on his recreation access before the Behavioral Management Report was fully processed. *Id.* He alleges these restrictions were imposed without due

1   process including "the right to call witnesses, access to waive rights, access to defend

2   himself." *Id.* Plaintiff indicates the restricted contact condition prevented him from

3   contacting staff to notify medical when he experienced an incident involving his heart

4   and his nitroglycerin pills failed to stop his chest pains. *Id.*

5       In Claim Six, plaintiff alleges defendant Reese denied plaintiff access to

6   therapeutic care in the form of sex offender specific treatment in violation of the

7   Fourteenth Amendment. Dkt. 30 at 36-37. He alleges that on July 12, 2023, he was

8   verbally and aggressively assaulted by a member in his assigned treatment group – the

9   "Red Group." *Id.*

10      Plaintiff alleges the assigned therapist, defendant VanVleet, "failed to protect"

11  plaintiff from the assaultive behavior and then "turned her aggression towards plaintiff."

12  *Id.* Plaintiff also alleges defendant VanVleet issued plaintiff an improper Behavioral

13  Management Report. *Id.* For these reasons plaintiff alleges he cannot receive "safe"

14  treatment from defendant VanVleet. *Id.* Plaintiff indicates he sought an alternative group

15  placement from defendant Reese, but defendant Reese has failed to place him in an

16  alternative group to date. *Id.*

17      As relief, plaintiff seeks:

18      1. Judgment for past and future pain, suffering, and emotional damage, in such
           amount as shall be proven at trial under Claim-1 in the complaint but not to
19         exceed $500.00 dollars per day, per each violation proven at trial of plaintiff's
           [ADA] rights resulting in actual pain and suffering to Plaintiff between July 14,
20         2023 to present date.
        2. Judgment for injunctive [r]elief removing each of the over administrations at
21         the facility proven at trial under Claim-2 of the complaint.
        3. Judgment for injunctive [r]elief removing each violation of rights established at
22         trial in Claim-3, Claim-4, Claim-5, and Claim-6 of the complaint under 42
           U.S.C. § 1983.
23      4. Judgment for any declaratory relief the court deems just and equitable.
        5. Judgment for such other relief as the court deems just and equitable.

24  *Id.* at 37.

25

DISCUSSION

**A.     Standard of Review – Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has alleged "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should only be granted if the complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint may be dismissed if it lacks a cognizable legal theory or states insufficient facts to support a cognizable legal theory. *Zixiang v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

When considering a Rule 12(b)(6) motion, the Court accepts all facts alleged in the complaint as true, and liberally construes a pro se complaint in the light most favorable to the plaintiff. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (pro se plaintiffs are held to less stringent pleading standards than represented plaintiffs). The Court is not, however, bound to accept as true -- labels, conclusions, formulaic recitations of the elements, or legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While the Court is to construe a complaint liberally, such construction "may not supply essential elements of

the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992).

Ordinarily, a *pro se* plaintiff should be granted leave to amend to address the deficiencies in his complaint. *McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992), *overruled on other grounds WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). However, "district courts are only required to grant leave to amend if a complaint can possibly be saved"; leave to amend is not required "if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). Moreover, the Court need not grant endless amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may properly be denied for "repeated failure to cure deficiencies by amendments previously allowed"); *Chodos v. West Publ'g. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." (citation and internal quotation marks omitted)).

**B.      42 U.S.C. § 1983 – Relevant Legal Standard**

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). *See also, Youngberg v. Romero*, 457 U.S. 307, 321-22 (1982) ("Persons who have been

involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

**C.    Claim One – ADA and RA**

*1.  Title II ADA and RA Claims*

Plaintiff alleges his transfer to Program Area One violated the ADA and RA because the living unit lacked ADA-compliant facilities required by plaintiff due to his disabilities, and defendants failed to provide reasonable accommodation to account for the lack of such facilities. Dkt. 30 at 13-16. Defendants contend plaintiff's allegations fail to state a claim that he was denied services required by the ADA. Dkt. 33 at 7.

Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally funded programs. *Id*. The ADA and the RA apply to confinement facilities such as state prisons and jails and have previously been construed to apply to the SCC. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010); *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Pierce v. County of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008); *Bettys v. Hamil*, No. 20-cv-5078-BHS-DWC, 2021 WL 2079796, at *5 (W.D. Wash. April 20, 2021) *report and recommendation adopted*, No. C20-5078 BHS-DWC, 2021 WL 2072522 (W.D. Wash. May 24, 2021) (denying motion to dismiss ADA and RA claims brought by civilly committed detainee at SCC).

The ADA provides a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the RA provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a).

"To state a claim of disability[6] discrimination under Title II [of the ADA], the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). To establish a violation of § 504 of the RA, a plaintiff must show that (1) she is an individual with a disability; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her disability; and (4) the program providing the benefit or services receives federal financial assistance. *See Lovell*, 303 F.3d at 1052.

Title II of the ADA and § 504 of the RA include an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities.

---

[6] The term "disability" under the ADA means, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

*Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017). Because it appears the elements of ADA and RA claims "do not differ in any respect relevant to the resolution of [this case]," the claims can be addressed together. *See Duvall*, 260 F.3d at 1135-36. "Under both Title II of the ADA and § 504 of the [RA], [Plaintiff] must show that he was excluded from participating in or denied the benefits of a program's services or otherwise discriminated against." *Updike*, 870 F.3d at 950–51.

Plaintiff alleges that he suffers from several disabilities. He alleges due to these conditions he requires the use of ADA-compliant toilets, showers, door openings accommodating his use of a walker, and access to a desktop computer keyboard. *See, e.g.,* Dkt. 30 at 13-16. Defendants do not dispute that plaintiff is an individual with a disability. Furthermore, access to showers and toilets constitutes a "program or service" under the ADA. *Pierce*, 526 F.3d at 1220 (district court erred in denying relief to challenge by mobility- and dexterity-impaired detainees to inaccessibility of prison's bathrooms, sinks, showers, and other fixtures); *see also Phipps v. Sheriff of Cook Cty.*, 681 F.Supp.2d 899, 916 (N.D. Ill. 2009) (collecting cases holding that showering, toileting, and lavatory use are regarded as programs and/or services under the ADA).

Defendants contend that they have not denied such services, because plaintiff acknowledges there was an attempt to provide some kind of accommodation with respect to a variable temperature shower and allowing access to facilities in the medical unit. Dkt. 33 at 8. But plaintiff has expressly alleged that these accommodations were not sufficient. Dkt. 30 at 15-16. He indicates he must walk to medical in order to access the toilet, that he must shower without variable temperature shower and without proper ADA safety handrails, and that he is suffering pain due to having to navigate non-ADA

compliant entrance and egress doors with his walking "assistance device", as well as when he is trying to prepare legal pleadings without access to a desktop keyboard. *Id.*

Furthermore, in his response to the motion, plaintiff asserts that he was refused necessary assistance with toileting (specifically with wiping), showering and mobility needs while in the Program One Area. Dkt. 37 at 6. He alleges defendant Lowe instructed staff not to assist plaintiff with opening the entrance and egress doors. Dkt. 30 at 15. He also asserts that the alleged "accommodations" were provided only when staff were available to take him down the way to a toilet off the living unit some thirty or more yards away behind multiple locked doors, and that the shower was only partially installed with no ADA safety equipment and that he had fallen several times. Dkt. 37 at 7. Plaintiff also sufficiently alleges the denial of these services was by reason of his disability – i.e., he could not adequately access them because he was disabled, not for other reasons.

At the motion to dismiss stage, plaintiff's factual allegations must be taken as true. Accordingly, the Court recommends the Court should deny defendants' motion to dismiss plaintiff's Title II ADA/RA discrimination claims.

*2. Request for Money Damages*

Defendants argue that, even if plaintiff has adequately pled an ADA/RA claim, his request for monetary damages should be dismissed because he has failed to plead intentional discrimination. Dkt. 33 at 8-9.

"[C]ompensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent." *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998), *as amended* (Oct. 8, 1998); *see Duvall v. County of Kitsap*, 260 F.3d 1124,

1138 (9th Cir. 2001). "To show intentional discrimination, this circuit requires that the plaintiff show that a defendant acted with 'deliberate indifference,' which requires 'both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that ... likelihood.'" *Updike*, 870 F.3d at 950–51 (quoting *Duvall*, 260 F.3d at 1139).

"When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.* (quoting *Duvall*, 260 F.3d at 1139). "To meet the second prong, the entity's failure to act 'must be a result of conduct that is more than negligent, and involves an element of deliberateness.'" *Id.* (quoting *Duvall*, 260 F.3d at 1139). "A public entity may be liable for damages under Title II of the ADA or § 504 of the Rehabilitation Act 'if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.'" *Id.* (quoting *Mark H. v. Lemahieu*, 513 F.3d 922, 937–38 (9th Cir. 2008)).

The Ninth Circuit has explained deliberate indifference as follows:

> Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course. Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.

*Duvall*, 260 F.3d at 1139.

The "failure to provide reasonable accommodation can constitute discrimination[.]" *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). "The question whether a particular accommodation is reasonable 'depends on the individual circumstances of each case' and 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards.'" *Id.* (quoting *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999)).

Defendants argue that plaintiff has failed to allege facts supporting deliberate indifference. Dkt. 33 at 8-9. Plaintiff argues defendants were on notice of these same issues because he informed them of the issues and had also filed a prior lawsuit in 2019 raising claims under the ADA and RA related to several of these same conditions when he was previously housed in Program Area One. Dkt. 30 at 14; Dkt. 37 at 4. The record reflects plaintiff's ADA and RA claims in that prior lawsuit survived a motion to dismiss and that the action was subsequently voluntarily dismissed. *See Bettys v. Hamil*, No. 20-cv-5078-BHS-DWC, Dkts. 86, 92, 93. Plaintiff asserts he voluntarily dismissed the action when he was moved from Program Area One to a housing location that met his needs (Program Area Three). Dkt. 30 at 14.

Plaintiff also argues he is not required to establish deliberate indifference or intentional discrimination at the pleadings stage, because he seeks both injunctive relief and monetary damages as remedies for his ADA/RA claim. Dkt. 37 at 5-7. Plaintiff's complaint adequately alleges that defendants were on notice regarding the lack of ADA-compliant facilities in Program Area One and sufficiently alleges, for pleading purposes,

REPORT AND RECOMMENDATION - 16

that their failure to provide ADA-compliant facilities or a reasonable accommodation constituted deliberate indifference.

The Court also notes that other district courts have determined that Rule 12(b)(6) does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but instead applies only to dismiss a claim in its entirety. *See, e.g. Jordan v. United States*, No. 15-cv-1199, 2015 WL 5919945, at *3 (S.D. Cal. Oct. 8, 2015) ("A prayer for damages constitutes a remedy, not a claim . . .. Thus, [a] prayer for relief does not provide any basis for dismissal under Rule 12.") (citing *Oppenheimer v. Southwest Airlines Co.*, No. 13-CV-260, 2013 WL 3149483, at *3-4 (S.D. Cal. June 17, 2013) ("[T]he availability of [a certain type of relief does not] control or even pertain to the sufficiency of any claim.")); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F.Supp.3d 620, 629 (W.D. Va. 2014) (declining to dismiss remedies other than injunctive relief because Rule 12(b)(6) is a vehicle to dismiss a "claim" in its entirety and a court "should not dismiss a complaint so long as it sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to any relief"). Cf. Fed. R. Civ. P. 54(c) (prevailing party should be awarded any relief to which prevailing party is entitled, "even if the party has not demanded that relief in its pleadings").

The Court therefore finds that dismissal of plaintiff's request for monetary damages for alleged violation of the ADA is not appropriate at this stage and defendants' motion to dismiss should be denied.

### 3. Individual Liability Claims

Plaintiff indicates he seeks to bring claims against the above-specified individual/non-entity defendants in their individual capacities. But "a plaintiff may not

raise individual-liability claims directly under the ADA or RA." *Hernandez v. Marcelo*, No. 119CV01219, 2020 WL 6075648, at *3 (E.D. Cal. Oct. 15, 2020), *report and recommendation adopted*, No. 119CV01219, 2021 WL 1164400 (E.D. Cal. Mar. 26, 2021); *Hayes v. Voong*, 709 F. App'x 494, 495 (9th Cir. 2018) ("The district court properly dismissed [plaintiff's] [ADA] and [RA] claims against defendants in their individual capacities because Title II of the ADA and Section 504 of the RA do not authorize claims against State officials in their individual capacities."); *see Vinson*, 288 F.3d at 1156 (holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act"); *see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials").

Thus, plaintiff's individual liability claims against the above-specified individual/non-entity defendants should be DISMISSED with prejudice.

### 4. Title III ADA Claims

Defendants contend that plaintiff's claims under Title III of the ADA should be dismissed because Title III applies only to private entities while the SCC is a public entity subject only to Title II. Dkt. 33 at 7-8. Plaintiff argues that his Title III claims are valid. Dkt. 37 at 7.

Plaintiff's claims pertain to a public entity, not to a private facility and are therefore governed by Title II of the ADA. 42 U.S.C. § 12131(1) ("public entity" means "any department, agency . . . or other instrumentality of a State or States or local

government"); 42 U.S.C. § 12132 (prohibiting discrimination by a "public entity"). Title III, in contrast, is entitled "public accommodations and services operated by private entities" and defines "private entity" as "any entity other than a public entity (as defined in section 12131(1))." 42 U.S.C. § 12181(6). Plaintiff's claims here are brought against a public entity and arise under Title II. *See Bettys*, 2021 WL 2079796, at *5 *report and recommendation adopted*, 2021 WL 2072522 (rejecting plaintiff's argument that he could bring Title III claims against a public entity).

Accordingly, defendants' motion to dismiss plaintiff's claims under Title III should be GRANTED and those claims should be dismissed with prejudice.

### 5. *2019 Placement in Program Area One*

Defendants argue that plaintiff's claims related to his placement in Program Area One in 2019 should be dismissed as barred by the statute of limitations. Dkt. 33 at 7. The Court does not read plaintiff's complaint to raise claims related to his 2019 placement and, in response to the defendants' motion, plaintiff clarifies that he does not intend to raise claims related to the 2019-time frame. Dkt. 37 at 4. Accordingly, defendants' request to dismiss plaintiff's allegations related to his 2019 placement in Program Area One should be denied as superfluous.

## D. Claim Two – Over-Administration of Civil Scheme in Violation of Fourteenth Amendment

In Claim Two, plaintiff alleges defendants violated his Fourteenth Amendment rights through the "over-administration" of the "civil law scheme" established under RCW 71.09. Dkt. 30 at 17-28.

Defendants move to dismiss these claims, arguing that "over-administration" is not a recognized constitutional violation. Dkt. 33 at 9-12. They further argue that restrictions on the unlimited ability to make purchases, ability to smoke cigarettes, ability to purchase video game consoles, ability to have a fundraiser, ability to seek exceptions to vendor policy, ability to use an "inner library loan system", ability to provide an unlimited amount of funds in a single transaction, ability to sell crafts, ability to operate a business, ability to shop at Amazon and Walmart, and ability to open a bank account are not recognized as rights but, rather, are privileges. *Id.* They also argue that plaintiff has failed to plead sufficient facts to state a claim with respect to any of his allegations in Claim Two. *Id.*

### 1.  Medical Care

Plaintiff alleges defendant Candella directed that plaintiff must meet weekly with a nurse who must document his medical issues and provide them to the doctor employed at SCC. Dkt. 30 at 25-26. He alleges that the doctor has not provided follow up care and he has been left in daily pain and suffering with multiple medical issues going unaddressed. *Id.* He alleges defendant Havens is the doctor employed at SCC and that she is aware of his dangerous medical conditions but has never seen plaintiff in person to address these issues. *Id.*

Plaintiff's Fourteenth Amendment medical care claims are governed by the standard set forth in *Youngberg v. Romero*, 457 U.S. 307, 321-22 (1982). "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* Because of this, the Court evaluates a civilly committed detainee's claims

under the Fourteenth, rather than the Eighth, Amendment and determines whether plaintiff's allegations fall into the "professional judgment" articulated in *Youngberg*, 457 U.S. at 321–324. *See Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016); *Samuels v. Ahlin*, 2017 WL 6594635 at *5 (E.D. Cal. 2017).

Plaintiff must establish defendants' "'conduct diverge[d] from that of a reasonable professional.'" *Mitchell*, 818 F.3d at 443 (quoting *Ammons v. Wash. Dep't of Soc. & Health Serv.*, 648 F.3d 1020, 1027 (9th Cir. 2011)). "[L]iability may be imposed only when [Defendants'] decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. Mere negligence or medical malpractice is not sufficient to demonstrate a constitutional violation. *See Patten v. Nichols*, 274 F.3d 829, 842–43 (4th Cir. 2001) (applying *Youngberg* to a denial of medical care for a civilly committed psychiatric patient and holding more than negligence is required to state a constitutional violation).

Plaintiff fails to allege sufficient facts to state a claim. He alleges SCC arranged for him to meet with a nurse (defendant Anderson) weekly, yet defendant Havens has failed to provide follow-up care. But plaintiff fails to articulate how these weekly meetings constitute inadequate medical care nor does he explain specifically what defendant Havens or defendant Anderson failed to do or, specifically, how plaintiff has been harmed as a result. Plaintiff fails to allege defendant Havens' or defendant Anderson's actions constitute a substantial departure from accepted professional judgment, practice, or standards.

1      Accordingly, defendants' motion to dismiss should be granted. This claim should

2  be dismissed without prejudice and with leave to amend.

3      *2. Smoking and Video Games*

4      With respect to the restrictions on smoking and purchasing video game consoles,

5  other courts have found that similar restrictions imposed on civilly committed individuals

6  do not implicate constitutional rights. *See Thomas v. Main*, No. 14CV5532, 2015 WL

7  1730170, at *7 (D.N.J. Apr. 13, 2015) (dismissing civil detainee's substantive due

8  process claim, finding "plaintiff's alleged deprivation of the right to smoke does not

9  implicate a fundamental right."); *see Banks v. Jesson*, No. 11-1706, 2011 WL 6275960,

10  at *1 (D. Minn. Dec. 15, 2011) (concluding that a civil detainee's "right to watch

11  television would certainly be deemed a *de minimis* restriction 'with which the

12  Constitution is not concerned.'" (quoting *Senty-Haugen v. Goodno*, 462 F.3d 876, 886

13  (8th Cir. 2006), and citing *Bell*, 441 U.S. at 539, n. 20)); *Cerniglia v. Price*, No. 1:17-cv-

14  00753, 2017 WL 4865452, at *3-4 (E.D. Cal. Oct. 27, 2017) ("[n]o court has found that

15  prisoners have a constitutional right to possess personal computers or items that are

16  similar to personal computers which are capable of accessing the internet in their

17  cells."); *White v. Monahan*, No. 07-CV-3022, 2009 WL 499121, at *2 (C.D. Ill. Feb. 24,

18  2009) (acknowledging that while civil detainees enjoy more liberties than convicted

19  prisoners, "[t]he inability to possess a computer does not implicate a property interest

20  that might be protected by procedural due process protections or an interest that might

21  be classified as a substantive due process interest."); *Spicer v. Richards*, No. C07-5109

22  FDB, 2008 WL 3540182, at *7 (W.D. Wash. Aug. 11, 2008) (finding no authority to show

23

24

25

that a sexually violent predator had a 14th Amendment right to possess a "cell phone, pager, computer, [or] color ink cartridge printer.").

The Court should follow the holdings of these persuasive authorities and grant defendants' motion to dismiss these claims; these claims should be dismissed with prejudice.

### 3. Remaining Claims

With respect to plaintiff's remaining claims – challenging limitations on: the unlimited ability to make purchases, ability to have a fundraiser, ability to seek exceptions to vendor policy, ability to use an "inner library loan system", ability to provide unlimited amount of funds in a single transaction, ability to sell crafts, ability to operate a business, ability to shop at Amazon and Walmart, and ability to open an outside bank account – plaintiff also fails to state a claim.

Plaintiff's general allegation of "over-administration" of the civil scheme does not state an independent constitutional claim that the Court can discern. However, even if construed as a Fourteenth Amendment substantive due process challenge, he fails to allege sufficient facts to state a claim.

Civilly committed persons have a substantive due process right to minimally adequate care and treatment. *Youngberg*, 457 U.S. at 318-20. "In determining whether a substantive right ... has been violated, it is necessary to balance the liberty of the individual and the demands of an organized society." *Id.* at 320. "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals[.]" *Id.* However, [i]f there is to be any uniformity in protecting these interests, this balancing cannot be left to the unguided discretion of a

judge or jury." *Id.* To reach the proper balance, "the Constitution only requires that the courts make certain that professional judgment in fact was exercised" in caring for the civilly committed person. *Id.*

Decisions, "if made by a professional, [are] presumptively valid," and liability may be imposed only when the decision is [a] substantial departure from accepted professional judgment, practice, or standards[.]" *Id.* at 322. Stated differently, "[t]he Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment ... within the bounds of professional discretion." *Hydrick v. Hunter*, 466 F.3d 676, 699 (9th Cir. 2007) (internal citation omitted), *overruled on other grounds; see also*, *Thomas S. by Brooks v. Flaherty*, 902 F.2d 250, 252 (4th Cir. 1990). Furthermore, restrictions that have a legitimate, non-punitive government purpose and that do not appear excessive in relation to that purpose are permissible. *Bell*, 441 U.S. at 535, 539; *U.S. v. Salerno*, 481 U.S. 739, 747 (1987). Legitimate, non-punitive government interests include maintaining institutional security, and effective management of a detention facility. *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004).

Plaintiff fails to allege sufficient facts to indicate that any of these restrictions amount to "punishment" within the bounds of professional discretion. Plaintiff alleges vaguely that the restrictions on number of packages, fundraisers, exceptions to vendor guidelines, "inner library loan"[7], and creation of a bank account, are more restrictive than those at criminal facilities but offers no facts to support this conclusory assertion.

---

[7] Plaintiff also appears to allege in conclusory fashion that the restrictions on "inner library loans" violate the First Amendment. But plaintiff fails to allege sufficient facts to support this claim or relevant to the applicable analysis under *Turner v. Safley*, 482 U.S. 78 (1987). *See Herrick v. Strong*, 745 F. App'x 287 (9th Cir. 2018) (applying *Turner* to First Amendment challenge brought by civil detainee housed at SCC); *Herrick v. Quigley*, 756 F. App'x. 726 (9th Cir. 2019) (same).

REPORT AND RECOMMENDATION - 24

1    He also makes no such assertion with respect to the restrictions on sending funds,

2    holding hobby craft sales, operating a business, and ordering from Walmart and

3    Amazon.

4          Plaintiff fails to allege sufficient facts to plausibly claim that these restrictions are

5    intended to punish, lack a legitimate, non-punitive governmental purpose, or are

6    excessive in relation to that purpose within the bounds of professional judgment. In

7    order to state a plausible claim, plaintiff cannot simply allege, without support, that

8    certain restrictions are greater than his criminal counterparts – he must also allege a

9    theory for how each named defendant's decision to impose these restrictions departed

10   from professional judgment. *See Donaghe v. Lashway*, No. 316CV05973RJBJRC, 2017

11   WL 4675645, at *3 (W.D. Wash. Oct. 18, 2017) (Dismissing civil detainee's conditions of

12   confinement claims on the grounds that "[t]he complaint cannot simply allege that

13   plaintiff, unlike criminal counterparts, lacks a baseball field and equipment; it must also

14   allege a theory for how each named defendant's decision to deny plaintiff a baseball

15   field and equipment substantially departed from professional judgment.").

16         Accordingly, defendants' motion to dismiss should be granted. Plaintiff's claims

17   should be dismissed without prejudice and with leave to amend.

18   **E.    Claim Three**

19         Plaintiff alleges violation of his rights under the FLSA and the Fourteenth

20   Amendment based on SCC's failure to pay him under the federal minimum wage

21   standard.

22

23

24

25

REPORT AND RECOMMENDATION - 25

1    "The Eleventh Amendment has been authoritatively construed to deprive federal

2    courts of jurisdiction over suits by private parties against unconsenting States." *Seven*

3    *Up Pete Venture v. Schweitzer,* 523 F.3d 948, 953 (9th Cir. 2008).

4        To the extent that plaintiff claims damages and other retrospective relief against

5    the State, or state officials acting in their official capacities, these claims should be

6    dismissed as barred by the Eleventh Amendment. *Arizona Students' Ass'n v. Arizona*

7    *Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) ("The Eleventh Amendment bars

8    individuals from bringing lawsuits against a state for money damages or other

9    retrospective relief."). There is no evidence that Washington, its agencies, or officers

10   have consented to such a suit for damages, and as such, they are immune from suits of

11   this kind brought in federal courts. *Pittman v. Oregon Employment Dept.,* 509 F.3d

12   1065, 1071 (9th Cir. 2007) (*internal quotations omitted*); *Malone v. Washington*, No. 19-

13   5574 RJB - JRC, 2020 WL 5817066, at *1 (W.D. Wash. Sept. 30, 2020) (finding

14   Eleventh Amendment bars claims for damages and other retrospective relief against the

15   State under the FLSA). The Eleventh Amendment does not preclude suits that seek

16   prospective injunctive and declaratory relief against a state official sued in their official

17   capacity, and thus, to the extent plaintiff asserts those claims, they are not subject to

18   dismissal based on Eleventh Amendment immunity. *Pittman,* 509 F.3d at 1071 (citing

19   *Ex Parte Young,* 209 U.S. 123, 156-57 (1908)); *Arizona Students' Ass'n*, 824 F.3d at

20   865.

21       However, plaintiff also fails to state a claim under the FLSA because he is not an

22   "employee" for purposes of the Act. As the Hon. Robert J. Bryan recently held in

23   addressing a claim brought by detainees at the SCC under the FLSA,

24

25

REPORT AND RECOMMENDATION - 26

while the Ninth Circuit has held that sexually violent predator detainees are entitled to "more considerate treatment and conditions of confinement than criminals whose confinement are designed to punish," *Hydrick v. Hunter,* 500 F.3d 978, (9th Cir. 2007), there is no indication that the improved "treatment and conditions" includes considering them "employees" for purposes of the FLSA. The Ninth Circuit has held that prisoners are not "employees" under the FSLA. *Burleson v. California,* 83 F.3d 311, 313–14 (9th Cir. 1996). Other circuits who have considered the question have found that civil detainees held pursuant to sexually violent predator statutes were analogous to prisoners to whom the FLSA doesn't apply. *Matherly v. Andrews,* 859 F.3d 264, 278 (4th Cir. 2017)(Rule 12(b)(6) dismissal of SVP detainee's FSLA claim proper); *Sanders v. Hayden,* 544 F.3d 812, 814 (7th Cir. 2008); and *Miller v. Dukakis,* 961 F.2d 7, 8-9 (1st Cir. 1992). These authorities are persuasive and the FLSA claims should be dismissed.

*Malone*, 2020 WL 5817066, at *1.

The Court should follow Judge Bryan's reasoning in *Malone*, and the authorities cited therein. *Id*. Based on this reasoning, defendants' motion to dismiss plaintiff's FLSA claims should be granted, and those claims should be dismissed with prejudice.

Plaintiff also argues defendants violated his Fourteenth Amendment right to equal protection. Plaintiff alleges other civilly confined individuals "labeled patients, residents, and offenders" in the State of Washington held at "both Eastern and Western State Hospitals, Sea Tac Immigration Detention Facilities, at Seattle SCTF, at Pierce County SCTF, and in community residential housing are provided minimum wage rights." Dkt. 30.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state a § 1983 claim for violation of the

Equal Protection Clause, a plaintiff must show that he was treated in a manner inconsistent with others similarly situated, and that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (internal quotations omitted).

Alternatively, when an action does not implicate a protected class such as race or religion, a plaintiff may establish a "class of one" equal protection claim by alleging that he has been intentionally treated differently from others similarly situated without any rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Action Apt. Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007). To "'be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects.'" *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (quoting *U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Plaintiff does not allege he is a member of a protected class. Furthermore, although plaintiff alleges he has been treated differently than detainees at other facilities, he fails to allege sufficient facts to demonstrate those detainees are prima facie identical in all relevant respects, or directly comparable in all material respects. Generally, prisoners or detainees housed in different institutions are not considered to be similarly situated. *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1019 (S.D. Cal. 2006).

Furthermore, SCC residents have previously been found not to be similarly situated to SCTF and WSH patients for equal protection purposes based on a challenge to differences in wages. *See Anderson v. Meneses*, No. 19-5574-RJB, 2022 WL 374326 at 6-7 (W.D. Wash. Feb. 8, 2022) (finding SCC residents were not similarly situated to SCTF and WSH residents and granting defendants' motion for summary judgment on plaintiff's equal protection claim).

Accordingly, defendants' motion to dismiss plaintiff's equal protection claim related to his wages should be granted. This claim should be dismissed without prejudice and with leave to amend.

**F.    Claim Four**

In Claim Four, plaintiff alleges defendants deliberately violated his First Amendment right to view non-sexual media items after defendant Devos "signed into effect a policy, procedure, or memorandum" that "limits plaintiff's ability to seek or obtain non-sexual media items." Dkt. 30 at 31-33.

"The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility." *Hydrick*, 500 F.3d at 994. "In weighing those interests, it cannot be ignored that ... [sexually violent predators (SVPs)] have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others." *Id.* "Therefore, the rights of SVPs may not necessarily be coextensive with those of all other civilly detained persons." *Id.* In analyzing whether a total confinement civil commitment facility's regulations violate a civilly committed person's First Amendment rights, Ninth Circuit

courts have applied the test established in *Turner v. Safley*. *See Herrick v. Strong*, 745 F. App'x 287 (9th Cir. 2018); *Herrick v. Quigley*, 756 F. App'x. 726 (9th Cir. 2019); citing *Turner v. Safley*, 482 U.S. 78 (1987).

Under *Turner*, four factors are relevant in deciding whether a regulation withstands constitutional challenge: (1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and detainees and facility resources; and (4) whether there are ready alternatives to the regulation. *Overton*, 539 U.S. at 131–132 (internal quotation marks omitted) (citing *Turner*, 482 U.S. at 89–91); *see also Allen v. Mayberg*, No. 106CV01801, 2019 WL 1047884, at *9 (E.D. Cal. Mar. 5, 2019).

In *Herrick v. Strong*, in addressing restrictions on detainees at SCC, the district court held that any restrictions on First Amendment rights must be non-punitive, a plaintiff must assert that the challenged restrictions are expressly intended to punish, the restrictions serve a non-punitive purpose but are nonetheless excessive, or that the legitimate purpose could be accomplished with less restrictive or harsh methods. *Herrick v. Strong*, No. C15-5779 RBL-KLS, 2016 WL 4755683, at *9 (W.D. Wash. Aug. 22, 2016), *report and recommendation adopted*, No. C15-5779 RBL-KLS, 2016 WL 4734315 (W.D. Wash. Sept. 12, 2016), *aff'd*, 745 F. App'x 287 (9th Cir. 2018).

The district court also stated that the SCC is a facility for the treatment of sexually violent predators and there is "nothing presumptively unconstitutional about limiting resident access to magazines, books and media at such a facility" but conditions of confinement must "bear some reasonable relation to the purpose for which personas

are committed." *Id.* The district court also noted that courts in this district have upheld

the SCC's practices with respect to magazines, books and media in the past. *Id.* (citing

*Mujahid v. Cunningham*, No. C10-591613HS, 2012 WL 527488, at *2 (W.D. Wash. Feb.

16, 2012) (dismissing challenges to SCC Policies 202 (Resident Postage, Packages,

Mail & Internal Distribution) and 208 (Sexually Explicit, Violent and Related Material);

*Marten v. Richards*, No. C09-5733RBL/JRC, 2010 WL 2650547, at *4 (W.D. Wash.

June 2, 2010) *report and recommendation adopted sub nom. Marten v. Henry*, No. 09-

5733 RBL, 2010 WL 2650542 (W.D. Wash: June 30, 2010) (upholding a challenge of

SCC's television and movie restrictions); *Spicer v. Richards*, No. C07-5109FDB, 2007

WL 4561101, at *8 (W.D. Wash. Dec. 21, 2007) (upholding a challenge to SCC Policy

208); *Stewart v. Richards*, No. C08-5275 RJB/KLS, 2008 WL 4643795, at * 1 (W.D.

Wash. Oct. 20, 2008) (dismissing with prejudice a similar challenge to SCC Policy 208).

        Plaintiff's allegations with respect to this claim are vague and somewhat

confusing. Plaintiff fails to identify a particular Washington state SCC policy, custom, or

practice, nor does he assert specifically what any such policy allows or prohibits. He

appears to allege the policy limits his ability to access non-sexual media but also

appears to challenge restrictions on access to sexual material as well. Although plaintiff

mentions certain movies, shows, and books, he fails to identify materials he has

specifically requested and been denied pursuant to the policy, when the denials

occurred, and which defendant or defendants issued the denials, nor does he explain

the basis for the denials. Plaintiff has failed to plead sufficient facts to state a plausible

claim that defendants have violated his First Amendment rights to access to media

under the standards outlined above.

1    Accordingly, defendants' motion to dismiss these claims should be granted. The

2    claims should be dismissed without prejudice and with leave to amend.

3    **G.    Claim Five**

4    Plaintiff alleges defendants retaliated against him in violation of the First

5    Amendment by moving him to Program Area One based on a Behavior Management

6    Report. Defendants argue plaintiff fails to allege sufficient facts to satisfy the elements

7    of a retaliation claim.

8    For those in custody, including prisoners and those deemed sexually violent

9    predators and subject to involuntary civil commitment:

10   > [A] viable claim of First Amendment retaliation entails five basic
     > elements: (1) An assertion that a state actor took some adverse
     > action against an inmate (2) because of (3) that prisoner's protected
11   > conduct, and that such action (4) chilled the inmate's exercise of his
     > First Amendment rights, and (5) the action did not reasonably
12   > advance a legitimate correctional goal.

13   *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *see Lough v. Washington*

14   *State Dep't of Soc. & Health Servs.*, No. 22-35631, 2023 WL 5665769, at *1 (9th Cir.

15   Sept. 1, 2023) (applying *Rhodes* standard to retaliation claim brought by individual civilly

16   committed and detained at SCC under Washington State's sexually violent predator

17   statute); *Turay v. Cunningham*, 485 F. App'x 281 (9th Cir. 2012) (same). "Mere

18   speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753

19   F.3d 899, 905 (9th Cir. 2014) (affirming grant of summary judgment where no evidence

20   that defendants knew of plaintiff's prior lawsuit or that defendants' disparaging remarks

21   were made in reference to prior lawsuit). To state a claim for retaliation, the plaintiff

22   must allege facts that establish an actual link between his exercise of constitutional

23

24

25

rights and the alleged retaliatory action. *See Pratt v. Rowland*, 65 F.3d 802, 807-810 (9th Cir. 1995).

Here, assuming plaintiff's transfer to Program Area One constitutes an adverse action, plaintiff fails to identify any protected conduct he was engaged in and fails to allege facts to establish a link between his exercise of constitutional rights and his move to Program Area One. Furthermore, plaintiff fails to allege facts to indicate that his move to Program Area One did not advance a legitimate correctional goal. Plaintiff acknowledges that his move was based upon a Behavioral Management Report issued based upon his alleged failure to follow some unidentified violations of "facility policy." Although plaintiff denies the allegations of the Behavioral Management Report, his allegations that the report was fabricated or a product of a conspiracy by defendants Guien and VanVleet is entirely speculative and unsupported by facts.

Accordingly, defendants' motion to dismiss with respect to plaintiff's retaliation claim should be granted.[8] The claim should be dismissed without prejudice and with leave to amend.

**H.    Claim Six**

In Claim Six, plaintiff alleges defendant Reese denied plaintiff access to therapeutic care in the form of sex offender specific treatment in violation of the Fourteenth Amendment. Dkt. 30 at 36-37.

---

[8] The Court notes that within Claim 5 plaintiff also mentions a potential due process violation related to his restrictions placed upon him based upon the Behavioral Management Report. Because plaintiff does not clearly identify this as a separate claim, and alleges insufficient facts to support it, the Court declines to address it as a separate claim. If plaintiff intends to present this as a separate claim, he should clarify his intention in an amended complaint and include additional facts to support such a claim.

As noted above, plaintiff's Fourteenth Amendment medical care claims are governed by the standard set forth in *Youngberg*, 457 U.S. at 321-22. Courts must determine whether plaintiff's allegations fall into the "professional judgment" articulated in *Youngberg*, 457 U.S. at 321–324. *See Mitchell*, 818 F.3d at 443. Plaintiff must establish defendants' "'conduct diverge[d] from that of a reasonable professional.'" *Mitchell*, 818 F.3d at 443 (quoting *Ammons v. Wash. Dep't of Soc. & Health Serv.*, 648 F.3d 1020, 1027 (9th Cir. 2011)). "[L]iability may be imposed only when [Defendants'] decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. Mere negligence or medical malpractice is not sufficient to demonstrate a constitutional violation. *See Patten v. Nichols*, 274 F.3d 829, 842–43 (4th Cir. 2001) (applying *Youngberg* to a denial of medical care for a civilly committed psychiatric patient and holding more than negligence is required to state a constitutional violation).

Persons committed as sexually violent predators ("SVP") are not criminals, but instead are "'sick persons.'" *Jones*, 393 F.3d at 933 (9th Cir. 2004) (citing *Hubbart v. Superior Court*, 969 P.2d 584, 605-611 (Cal. 1999)). Thus, confinement on the basis of mental illness results in a due process requirement to provide "such individual treatment as will give [the mentally ill individual] a realistic opportunity to be cured or improve his or her mental condition.... because absent treatment, [such individuals] could be held indefinitely as a result of their mental illness...." *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980) (quoting *Wyatt v. Stickney*, 325 F. Supp. 781, 784 (M.D. Ala. 1971) and 344 F.Supp. 373 (1972) *aff'd sub nom., Wyatt v. Aderbolt*, 503 F.2d 1305 (5th Cir. 1974)

(other citation omitted); *see also Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger*, 652 F.2d at 778) ) (in "*Ohlinger,* we held that the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released").

Plaintiff fails to allege sufficient facts to state a claim. Plaintiff fails to explain the basis for the "improper" BMR allegedly issued by defendant VanVleet nor does he explain the alleged verbal "assault" by the other group member, or how he believes defendant VanVleet responded improperly. Plaintiff also fails to allege sufficient facts to support his allegation that he believes he would be retaliated against or suffer emotional damages if he returned to the "Red Group." Plaintiff fails to assert sufficient facts to state a plausible claim that the alleged refusal by defendant Reese to place him in a different group with a different therapist constitutes such a substantial departure from accepted profession judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. Nor has petitioner alleged sufficient facts to show that the offered treatment program fails to provide him with such individual treatment as will give him a realistic opportunity to be cured or to improve his mental condition.

Accordingly, defendants' motion to dismiss this claim should be granted. The claim should be dismissed without prejudice and with leave to amend.

I.    **Claims Against Specific Defendants**

1.  *State of Washington*

Defendants argue the Eleventh Amendment bars plaintiff's claims against the State of Washington. Dkt. 33 at 23. Plaintiff has confirmed he is not bringing Section 1983 claims against the State of Washington directly. Dkt. 36 at 13-14. Furthermore, plaintiff's ADA and RA claims are properly brought against the State of Washington.

The Oregon district court in *Olson v. Allen*, No. 3:18-CV-001208-SB, 2019 WL 1232834, at *2–4 (D. Or. Mar. 15, 2019), summarized the relevant law regarding the Eleventh Amendment and claims brought under Title II of the ADA. In addressing defendants' argument that it was entitled to summary judgment because the Eleventh Amendment barred plaintiff's Title II ADA claim against the state of Oregon, the district court stated:

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the text of the Eleventh Amendment preserves a state's sovereign immunity only when it faces suits by citizens of a different state, the Supreme Court has "extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citations omitted); *see also Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1180 (9th Cir. 2003) (noting that the Eleventh Amendment also applies to "certain actions against state agencies and state instrumentalities") (citation and quotation marks omitted).
>
> Plaintiffs may overcome the Eleventh Amendment bar if Congress abrogates a state's sovereign immunity. *See Garrett*, 531 U.S. at 364 ("Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of its § 5 power.") (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ). Congress abrogates a state's sovereign immunity if it (1) "makes its intention to abrogate unmistakably clear in the language of the statute" and (2) "acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003). In 1999, the Ninth Circuit held that that Title II of the ADA meets both requirements. *See Dare v. California*, 191 F.3d 1167, 1175 (9th Cir. 1999) (holding that Title II abrogated state sovereign immunity because it "was a

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

congruent and proportional exercise of Congress' enforcement powers under § 5 of the Fourteenth Amendment").

After *Dare*, the Supreme Court in *Garrett* held that the Eleventh Amendment bars claims under Title I of the ADA, but "left open ... the question whether the Eleventh Amendment permits suits for money damages under Title II." *Tennessee v. Lane*, 541 U.S. 509, 514 (2004) (citing *Garrett*, 531 U.S. at 360 n.1). In *Lane*, the Supreme Court held that Title II abrogated state sovereign immunity but limited its holding to cases implicating the fundamental right of access to the courts. *See id.* at 531 ("Because we find that Title II unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services, we need go no further.") (citation omitted). The Court then extended *Lane*'s holding to all Title II claims that are based on conduct that violates the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.") (emphasis in original). *Georgia* set forth a three-part test to determine whether a Title II claim may proceed against a nonconsenting state: (1) does a state's alleged conduct violate Title II; (2) does the state's alleged conduct also violate the Fourteenth Amendment; and (3) is Congress' abrogation of sovereign immunity valid even if the state's alleged conduct does not violate the Fourteenth Amendment. *Id.*

Defendants argue that *Garrett* and *Lane* require the Court to conduct a claim-by-claim analysis to determine whether the Eleventh Amendment bars Title II claims. (Defs.' Mem. at 7.) The Ninth Circuit's decision in *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791 (9th Cir. 2004) forecloses Defendants' argument.

In *Phiffer*, the state of Oregon appealed the district court's denial of its motion for judgment on the pleadings on the plaintiff's Title II claim based on Eleventh Amendment immunity, arguing that *Garrett* upset prior circuit precedent. The Ninth Circuit disagreed. *Id.* at 793. The Supreme Court then granted certiorari, vacated the prior panel decision, and remanded for further consideration in light of *Lane. Id.* at 792. On remand, the *Phiffer* court declined to engage in a case-by-case analysis as to whether the plaintiff's Title II claim implicated a fundamental right, concluding that its "initial resolution of th[e] case is consistent with *Lane*'s holding[.]" *Id.*

Following both *Lane* and *Georgia*, the Ninth Circuit continues to reaffirm its decision in *Phiffer. See Okwu v. McKim*, 682 F.3d 841, 845 (9th Cir. 2012) ("Title II abrogates a state's Eleventh Amendment immunity.") (citing *Phiffer*, 384 F.3d at 792); *Daniel v. Levin*, 172 F. App'x 147, 149 (9th Cir. 2006) ("[T]he Eleventh Amendment does not bar ADA or [Rehabilitation Act] suits against state officials in their official capacities for injunctive relief or damages.") (citing

*Phiffer*). So do a majority of district courts within the Ninth Circuit.[9] *See, e.g.*, *Karam v. Univ. of Ariz.*, No. 18-cv-00455-RCC, 2019 WL 588151, at *4 (D. Ariz. Feb. 13, 2019) (finding that "[t]he Ninth Circuit has clearly determined that Congress validly abrogated state's immunity under Title II of the ADA") (citing *Phiffer*); *Fernandez v. Rice*, No. 15-cv-00487-LEK, 2017 WL 988103, at *4 (D. Haw. Mar. 14, 2017) (citing *Phiffer* to hold that "Congress has abrogated states' Eleventh Amendment immunity with respect to claims under Title II of the ADA"); *Miller v. Ceres Unified Sch. Dist.*, 141 F. Supp. 3d 1038, 1043 (E.D. Cal. 2015) (declining to determine whether the plaintiff's Title II claim implicated a fundamental right because "the Ninth Circuit has not expressly called for this 'nuanced, case-by-case analysis' to occur") (citing *Phiffer*).

　　　　Consistent with binding precedent, the Court finds that Title II abrogates Oregon's Eleventh Amendment immunity regardless of whether Olson's claim implicates a fundamental right.

*Olson*, 2019 WL 1232834, at *2–4.

　　　　For the persuasive reasons that supported the Oregon Federal District Court's holding in *Olson*, this District Court should deny defendants' motion to dismiss the State of Washington as a defendant with respect to plaintiff's ADA/RA claims.

### 2. Jilma Meneses

　　　　Defendants move to dismiss defendant Jilma Meneses, arguing that plaintiff fails to allege sufficient facts to support a claim against this defendant. Dkt. 33 at 23. Defendants note that plaintiff's only allegation against defendant Meneses is that he wrote her letters regarding his challenges to the policies discussed in Claim Two and

---

[9] [FN 1 in *Olson*] To be sure, some district courts within the Ninth Circuit have conducted the case-by-case analysis Defendants seek here. *See Chadam v. Palo Alto Unified Sch. Dist.*, No. 13-cv-4129-CW, 2014 WL 325323, at *4 (N.D. Cal. Jan. 29, 2014) (analyzing whether the plaintiff's Title II claim implicated a fundamental right); *Talevski v. Regents of the Univ. of Cal.*, No. 13-cv-958-JM, 2013 WL 4102202, at *4 (S.D. Cal. Aug. 13, 2013) (interpreting *Lane* as requiring a case-by-case analysis to determine whether the plaintiff's Title II claim implicated a fundamental right). Both *Chadam* and *Talevski* relied on a concurrence in *Phiffer* stating that it is "open to question whether Title II validly abrogates state sovereign immunity where no such fundamental right is at issue." *Phiffer*, 384 F.3d at 793 (O'Scannlain, J., concurring). However, Judge O'Scannlain acknowledged that *Dare* "control[led] the outcome of th[e] case," and remained binding precedent absent en banc review. *Id.*

that Secretary Meneses is the current appointed Secretary of DSHS and is responsible for hiring the CEO of SCC and answering complaints. *Id.* Defendants argue that these allegations are insufficient to demonstrate defendant Meneses violated his rights. *Id.*

Because the Court has already recommended dismissal of Claim Two in its entirety for failure to state a claim, and plaintiff's only allegations against defendant Meneses are asserted in Claim Two, the Court has already recommended dismissal of the claims alleged against defendant Meneses. The Court declines to address defendants' additional arguments for dismissal here.

### 3. Tim Whitehouse

Defendants move to dismiss defendant Tim Whitehouse, arguing that plaintiff fails to allege sufficient facts to support a claim against this defendant. Dkt. 33 at 23-24. Defendants note that plaintiff only references defendant Whitehouse once, in Claim Three, and fails to allege any claims regarding food management, which is the only capacity in which he is employed. *Id.* Defendants argue that plaintiff's allegations are insufficient to establish defendant Whitehouse violated his rights. *Id.*

Because the Court has already recommended dismissal of Claim Three in its entirety for failure to state a claim, and plaintiff's only allegations against defendant Whitehouse are asserted in Claim Three, the Court has already recommended dismissal of the claims alleged against defendant Whitehouse. The Court declines to address defendants' additional arguments for dismissal here.

### 4. Casseanna Anderson

Defendants move to dismiss defendant Casseanna Anderson, arguing that plaintiff fails to allege sufficient facts to support a claim against this defendant. Dkt. 33 at

24. Defendants notes that plaintiff only refers to defendant Anderson once in conjunction with other defendants whom plaintiff asked for medical assistance but that he fails to allege facts to demonstrate defendant Anderson personally participated in violating his rights. *Id.*

   The Court notes that plaintiff's complaint brings claims against defendant Anderson in Claim One and Claim Two. The Court has already recommended dismissal of the individual capacity claims against defendant Anderson in Claim One and has recommended dismissal of all claims in Claim Two. Accordingly, the Court declines to address plaintiff's additional arguments for dismissal of these claims here. With respect to plaintiff's remaining official capacity claims alleged against defendant Anderson in Claim One, defendant fails to directly move for dismissal of these claims based upon the failure to allege sufficient facts to support such a claim. Without specific argument from defendants on this issue, the Court declines to address it here. Plaintiff's official capacity claims against defendant Anderson alleged in Claim One should remain.

   *5.  SCC Ombudsman*

   Defendants move to dismiss "SCC Ombudsman" as a defendant noting that, beyond referring to this position, plaintiff fails to allege any facts to support a claim. Dkt. 33 at 24.

   Plaintiff, in opposition, clarifies and concedes that he does not intend to name "SCC Ombudsman" as a defendant in his complaint. Dkt. 37 at 14. The Court does not read plaintiff's complaint to allege a claim against "SCC Ombudsman." Accordingly, defendants' motion to dismiss should be denied as moot or unnecessary.

   *6.  Official Capacity Claims*

1    Defendants move to dismiss all of plaintiff's official capacity claims as barred by

2    the Eleventh Amendment.

3    "The Eleventh Amendment has been authoritatively construed to deprive

4    federal courts of jurisdiction over suits by private parties against unconsenting

5    States." *Seven Up Pete Venture,* 523 F.3d at 953.

6    As discussed above, defendants fail to establish plaintiff's ADA/RA claims

7    against the State or against state officials in their official capacities are barred by

8    sovereign immunity. Accordingly, defendants' motion to dismiss plaintiff's official

9    capacity claims brought under the ADA/RA are denied.

10    With respect to plaintiff's 42 U.S.C. § 1983 claims, the Court has already

11    recommended dismissal of those claims above. However, to the extent that plaintiff's §

12    1983 claims seek damages or other retrospective relief against state officials acting in

13    their official capacities, these claims are also subject to dismissal as barred by the

14    Eleventh Amendment -- defendants' motion to dismiss those claims should be granted

15    on that basis as well. There is no evidence that Washington, its agencies, or officers

16    have consented to such a suit and as such, they are immune from suits of this kind

17    brought in federal courts. *Pittman,* 509 F.3d at 1071 (*internal quotations omitted*);

18    *Malone*, 2020 WL 5817066, at *1. However, the Eleventh Amendment does not

19    preclude suits that seek prospective injunctive or declaratory relief against a state

20    official, and thus, plaintiff's § 1983 official capacity claims seeking such relief are not

21    subject to dismissal based on sovereign immunity -- to the extent defendants seek

22    dismissal of these claims on this basis as well, the motion should be denied. *Ex Parte*

23    *Young,* 209 U.S. 123 (1908).

24

25

CONCLUSION

For the foregoing reasons, the undersigned recommends defendants' motion to dismiss (Dkt. 33) be GRANTED IN PART and DENIED IN PART, as follows:

(1) Claim One: ADA/RA Claims

    a. Defendants' motion to dismiss should be granted to the extent that plaintiff's Title III ADA claims should be dismissed with prejudice.

    b. Plaintiff's individual capacity claims brought under Title II of the ADA/RA against the non-entity/individual defendants (McFarlane, Candella, Yockey, Guien, Havens, Anderson, Lowe) should also be dismissed with prejudice.

    c. Defendants' motion to dismiss should be denied to the extent it seeks to dismiss plaintiff's Title II ADA/RA claims and plaintiff's request for money damages under Title II of the ADA/RA brought against the defendants in their official capacities and against the entity defendants (State of Washington and DSHS). Those claims survive.

    d. Defendants' motion to dismiss should be denied as unnecessary to the extent it seeks to dismiss claims related to plaintiff's placement in Program Area One in 2019.

(2) Claim Two: Fourteenth Amendment "Overadministration" Claim

    a. Defendants' motion to dismiss should be GRANTED.

    b. Plaintiff's Fourteenth Amendment substantive due process claims challenging the SCC restrictions on smoking and purchasing video game consoles should be dismissed with prejudice.

  c. Plaintiff's remaining Fourteenth Amendment claims challenging his medical care and challenging limitations on the unlimited ability to make purchases, ability to have a fundraiser, ability to seek exceptions to vendor policy, ability to use an "inner library loan system", ability to provide unlimited amount of funds in a single transaction, ability to sell crafts, ability to operate a business, ability to shop at Amazon and Walmart, and ability to open an outside bank account should be dismissed without prejudice and with leave to amend.

(3) Claim Three: FLSA and Fourteenth Amendment Equal Protection – Minimum Wage

  a. Defendants' motion to dismiss should be GRANTED.

  b. Plaintiff's FLSA claims should be dismissed with prejudice.

  c. Plaintiff's Fourteenth Amendment Equal Protection claims related to wages should be dismissed without prejudice and with leave to amend.

(4) Claim Four: First Amendment – Media Policy

  a. Defendants' motion to dismiss should be granted. Plaintiff's claims should be dismissed without prejudice and with leave to amend.

(5) Claim Five: First Amendment Retaliation

  a. Defendants' motion to dismiss should be granted. Plaintiff's claims should be dismissed without prejudice and with leave to amend.

(6) Claim Six: Fourteenth Amendment Denial of Therapeutic Care

  a. Defendants' motion to dismiss should be granted. Plaintiff's claims should be dismissed without prejudice and with leave to amend.

(7) Claims Against Specific Defendants:

    a.  Defendants' motion to dismiss the State of Washington should be denied. The State of Washington should remain as a defendant with respect to plaintiff's ADA/RA claims only.

    b.  The Court has already recommended dismissal of the claims alleged against defendants Meneses (Claim Two) and Whitehouse (Claim Three), as well as the individual capacity claims against defendant Anderson (Claim One). Accordingly, the Court need not address defendants' additional arguments for dismissal of these claims. Because defendants make no specific argument for dismissal of the remaining official capacity claims against defendant Anderson in Claim One (apart from their Eleventh Amendment argument), the Court should decline to address that issue and plaintiff's official capacity claims against defendant Anderson alleged in Claim One should remain.

    c.  Defendants' motion to dismiss "SCC Ombudsman" as a defendant should be denied as unnecessary.

    d.  Defendants' motion to dismiss plaintiff's official capacity claims brought under the ADA/RA should be denied.

    e.  The Court has already recommended dismissal of all of plaintiff's 42 U.S.C. § 1983 claims above. However, to the extent that plaintiff's § 1983 claims seek damages or other retrospective relief against state officials acting in their official capacities, these claims are also subject

to dismissal as barred by the Eleventh Amendment -- defendants'

motion to dismiss those claims should be granted on that basis as well.

To the extent plaintiff's § 1983 claims seek prospective injunctive or

declaratory relief against state officials acting in their official capacities,

his claims are not subject to dismissal as barred by the Eleventh

Amendment -- to the extent defendants seek dismissal of these claims

on this basis as well, the motion should be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall

have fourteen (14) days from service of this report to file written objections. *See also*

Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can

result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474

U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations

omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is

directed to set the matter for consideration on **August 15, 2024**, as noted in the

caption.


Dated this 31st day of July, 2024.




*Theresa L. Fricke*
_____
Theresa L. Fricke
United States Magistrate Judge