The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN EDWARD BETTYS,
Plaintiff,

v.

STATE OF WASHINGTON, et al.,
Defendants.

Case No. 3:23-cv-05838-BJR-TLF

**ORDER RE: REPORT AND RECOMMENDATION**

## I.  INTRODUCTION

This matter comes before the Court on a Report and Recommendation ("R&R") of U.S. Magistrate Judge Theresa Fricke, which recommends granting in part and denying in part Defendants' Motion for Summary Judgment. That motion seeks dismissal of *pro se* Plaintiff John Bettys' sole remaining claim, brought under Title II of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and/or §504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq*. The Court has reviewed the R&R and objections thereto, and the briefs and exhibits filed in support of and in opposition to the Motion for Summary Judgment, and finds and rules as follows.

## II.  BACKGROUND

In her R&R, Magistrate Judge Fricke neatly summarized this case's relevant factual and procedural background as follows:

ORDER

- 1

Plaintiff filed his complaint on September 15, 2023. Dkt. 1. . . . On May 7, 2024, all defendants moved to dismiss for failure to state a claim. Dkt. 33. On July 31, 2024, the Magistrate Judge recommended that the motion should be denied in part and granted in part. Dkt. 40. On August 21, 2024, the Honorable Barbara J. Rothstein adopted the Report and Recommendation. Dkt. 42.

The motion to dismiss was granted with leave to amend for some claims; plaintiff did not file an amended complaint. The motion was denied as to plaintiff's Title II ADA claims. *Id*. As a result, the only remaining claims are Title II ADA/ RA claims against the State of Washington, and DSHS, and individual defendants in their official capacities.

Plaintiff's remaining claims are premised on alleged violations that occurred while he was housed in program area-1 between November 2022 and January 2023 and between July 2023 to February 2024. Dkt. 30, complaint at 13-16.

Plaintiff is civilly committed under Washington State's Sexually Violent Predators Act, RCW 71.09. Dkt. 44, motion for summary judgment, at 2. He currently resides at the DSHS Special Commitment Center on McNeil Island. *Id*.

Program area-1 is known as the Cedar Unit. Dkt. 49, declaration of Deborah Havens, at 2. Plaintiff resided in Cedar South Unit after his surgery. Dkt. 48, declaration of Mark MacFarlane, at 1. Cedar Unit consists of individuals who are either new to SCC and are in processing, require more supervision due to disruptive behavior, or have medical needs that require them to be closer to the medical unit. *Id*. at 2. Plaintiff had significant restrictions during his recovery — for the first six weeks he could not lift anything at all; after six weeks he was permitted to lift ten pounds which then increased by five pounds per week. Dkt. 49, Havens decl., at 3. Residential staff were instructed to open all doors for him while the lifting restrictions were in place. *Id*.

In January 2023, plaintiff was moved to program area 3. *Id*. at 3. This area is known as the Redwood Unit. Dkt. 49, MacFarlane decl. at 3. By this time the lifting restrictions were removed. *Id*. In July 2023 plaintiff returned to the Cedar Unit following a behavioral incident and Behavioral Modification Report. *Id*. Plaintiff resided in Cedar North Unit during this time. Dkt. 48, Havens decl., at 1-2. While residing in Cedar North the medical focus was on managing his chronic conditions of diabetes, morbid obesity with a weight near 400 pounds, a propensity toward congestive heart failure, and hyperlipemia. *Id*. at 3.

In February 2024, plaintiff returned to Redwood Unit. Dkt. 46, declaration of Calvin Guien, at 2.

R&R, at 1-3. Dkt. No. 65.

ORDER

- 2

Magistrate Judge Fricke recommends dismissing all but a single aspect of Plaintiff's remaining claim. Specifically, the R&R recommends dismissal of the ADA/RA claim as it pertains to Defendants' purported failure to provide access to an ADA-compliant computer keyboard in the Cedar Unit, and their purported failure to provide him an ADA-compliant showering facility. After reviewing the argument and evidence of the parties, the R&R concludes that neither claim is supported by any evidence creating a dispute of material fact, and that Defendants are entitled to judgment in their favor on both.

However, the R&R recommends denying Defendants' request for judgment on Plaintiff's claim as it relates to Defendants' alleged failure to provide Plaintiff timely access to an ADA-compliant toilet. Defendants filed an Objection, which took issue with this recommendation, and unsurprisingly did not object to dismissal of all other aspects of Plaintiff's ADA/RA claim. Plaintiff filed a "Response to Defendants' Objection," which addressed arguments raised in Defendants' Objection, but failed to object to—and therefore, essentially conceded—dismissal of his claim as it relates to a computer keyboard and showering facilities.

Accordingly, the Court adopts those aspects of the R&R to which neither side has lodged an objection, and dismisses Plaintiff's claim as it relates to access to a keyboard and shower. The Court reviews de novo the remainder of the claim as it relates to timely access to a toilet, as follows.

### III.   DISCUSSION

**A. Standard of Review of R&R and Summary Judgment; and Elements of ADA/RA Claim**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely

ORDER
- 3

objects to a magistrate judge's report and recommendation, the court is required to "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1).

The Court adopts the standard governing motions for summary judgment as accurately laid out in the R&R. *See* R&R at 4-5. The Court also adopts the R&R's recitation of the elements of an ADA and RA claim, which states that those statutes:

> prohibit discrimination on the basis of a disability in the programs, services, or activities of a public entity.[1]
>
> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to the services, programs, and activities provided for inmates by jails and prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-13 (1998).
>
> "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

R&R, at 5-6.

**B. Whether Plaintiff Has Demonstrated a Dispute of Fact on His ADA/RA Claim**

    **1. Whether Plaintiff Is a Qualified Individual With a Disability**

"Disability" is defined by the ADA, with respect to an individual, to include "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1). This definition "shall be construed in favor of broad coverage,

---

[1] Because there is no significant difference between the substantive standards of the ADA and the Rehabilitation Act, the claims may be analyzed together. *See Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1047 n. 7 (9th Cir.2009).

ORDER
- 4

1  to the maximum extent permitted by this chapter." 42 U.S.C. § 12102(A). Major life activities

2  include but are not limited to: caring for oneself, performing manual tasks, seeing, hearing, eating,

3  sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

4  concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2).

5      During the period of November 2022 to January 2023 residing in the Cedar South Unit,

6  Plaintiff was recovering from major cardiothoracic surgery. In the time following his surgery, his

7  mobility was severely restricted and "he was not able to lift anything for six weeks and then was

8  able to lift ten pounds, which then increased by five pounds per week." R&R at 7 (citing Havens

9  Decl. at 3). Defendants acknowledge that because of these restrictions, Plaintiff was not permitted

10 to open doors on his own, and they do not dispute that during this time, Plaintiff was disabled as

11 defined by the ADA. Havens Decl., ¶ 14.

12      Defendants do dispute that Plaintiff was unable to open doors during his second stay, in

13 the Cedar North Unit, in the July 2023-February 2024 time period, but they concede generally

14 (without reference to any specific time period) that Plaintiff "is disabled through his diabetes."

15 Defs.' Rep. ISO MSJ at 3. In addition, Plaintiff has submitted evidence that he suffers from a

16 "non-healing fracture of the left foot," requiring him at various times to use a wheelchair and/or

17 crutches. *See* Ex. I to Pl.'s Rep.; *see also* Marshal Decl. ("I observed John Bettys multiple times

18 attempting to open Program Area One Cedar Unit heavy steel doors while struggling to use his

19 walker device and/or wheelchair."). The R&R determines that there is a "genuine dispute of

20 material fact as to whether plaintiff is a qualified person with a disability during the period from

21 July 2023 to February 7, 2024," a conclusion with which neither party takes issue. R&R at 9.

22 Taking the record and the parties' arguments together, the Court concludes that Defendants have

23 failed to demonstrate under Federal Rule 56(a) that there is "no genuine dispute" or that they are

24 ORDER
25 - 5

entitled to judgment in their favor as to whether Plaintiff was a qualified individual with a disability during either stay in the Cedar Unit.

## 2. Whether Plaintiff Was Excluded From Services by Reason of His Disability

Under the ADA, the next question becomes whether the Plaintiff was excluded from participation in or otherwise discriminated against with regard to Defendants' services, programs, or activities by reason of a disability. 42 U.S.C. § 12132. As noted above, all that remains at issue is whether Defendants provided Plaintiff timely access to a toilet he was able to use. *See supra* at 3.[2]

Defendants generally dispute that Plaintiff was denied access to appropriate toileting facilities. During his stays in both Cedar South and Cedar North, Plaintiff was given permission to use the ADA-compliant toilet in the adjacent medical unit, which the evidence reflects he was physically able to use.[3] McFarlane Decl., ¶ 12.b. That toilet was separated from the Cedar living units by heavy security doors. *Id.*, ¶ 9.

---

[2] The Court has identified some confusion and need for clarification regarding the R&R's treatment of a putative claim concerning the heavy security doors located between the Cedar Units and the medical facility. As noted, "because there was no ADA toilet in Cedar North, plaintiff was required to walk through the security doors [to the medical unit] to access an ADA acceptable toilet." R&R at 15. The R&R appears to construe Plaintiff's demand that the heavy doors be replaced with automatic doors he would be able to open himself as a separate count under the ADA. The R&R goes on to recommend that the Motion for Summary Judgment be "DENIED as to plaintiff's claim for damages concerning the doors." R&R at 20. Following suit, Defendants' Objection is largely devoted to arguing that the putative door-related ADA claim be dismissed.

However, this Court does not construe Plaintiff's demand that the doors be replaced as an attempt to state a distinct ADA violation based on the security doors themselves. Instead, his suggestion that the ADA requires that they be replaced is better understood as a purportedly reasonable accommodation that would have enabled him to access an ADA-compliant toilet. *See, e.g.*, Compl. at 13 (complaining of Defendants "not fully and completely accommodating all of Plaintiff's established and known disability to include providing someone to open the heavy steel doors"). To the extent that Plaintiff *is* attempting to articulate a stand-alone ADA violation based on the doors, he fails to articulate how such a claim satisfies any of the elements of an ADA claim or cite any authority for the position that the doors themselves violated the ADA, and such a claim would be dismissed. Whether automating (or otherwise altering) the security doors would have been a reasonable accommodation of Plaintiff's alleged disability regarding access to a toilet, however, remains in dispute.

[3] The parties do not appear to dispute that due to mobility limitations, in particular related to his inability to wipe himself after defecating, Plaintiff was unable to use the toilets in the Cedar South or Cedar North units.

ORDER
- 6

Defendants submit evidence that while Plaintiff resided in Cedar South following his surgery, staff was instructed to help him to the toilet. R&R at 11 (citing Dkt. 50, declaration of Al Nerio, at 2) ("When he was on Cedar while recovering from surgery, I was aware that Mr. Bettys required assistance opening doors, and staff were notified of this need and directed to assist him."). However, Plaintiff has averred that he was "denied multiple time[s] access to the medical area toilet, required to wait for escort staff numerous times, which resulted in defecating in his clothing numerous times which was witnessed by his peers." Dkt. No. 52 at 10.[4] He has submitted declarations of those fellow residents, including, for example, that of Raymond Marshall, who "was confined in the housing unit with [Plaintiff] on Cedar North" during the July 2023-February 2024 time period. Marshall avers:

> I observed multiple times John Bettys soiling his clothing with fecal matter while waiting for staff to take him off the living unit to a toilet he could use.
>
> I personally observed John Bettys requesting use of a toilet in medical and having to wait extended amounts of time up to 45 minutes for staff to escort him to a toilet. . . .
>
> I observed John Bettys multiple times attempting to open Program Area One Cedar Unit heavy steel doors while struggling to use his walker device and/or wheel chair due to apparently the weight of these doors. Marshall Decl., Dkt. No. 55, ¶¶ 1-5.

As noted above, it is Defendants' position that Plaintiff had "as-needed" access to the medical unit toilet, and that during his November 2022-January 2023 stay in Cedar South, staff was instructed to provide Plaintiff help going to the toilet. However, the record is mixed as to whether during Plaintiff's stay at Cedar South staff in fact consistently helped Plaintiff to the

---

[4] Unless otherwise noted, both parties fail to specify whether their respective allegations concern Plaintiff's stay in Cedar South or Cedar North. For purposes of this Order and its conclusion that Defendants have failed to demonstrate an absence of dispute of fact on Plaintiff's ADA claim, the Court determines that this failure is immaterial.

ORDER
- 7

1   toilet on a timely basis; or that such help was provided during Plaintiff's July 2023-February

2   2024 stay in Cedar North.

3       Based upon this record, the R&R concludes that "a rational finder of fact could conclude

4   that plaintiff was denied access to an appropriate toilet because of his disability while residing in

5   Cedar Unit. . . . During his time on Cedar South, staff was instructed to open the door for

6   plaintiff, but the parties dispute whether plaintiff had to wait an unreasonable amount of time to

7   use the toilet." R&R at 13. The R&R concludes that "[t]he record taken as a whole demonstrates

8   a genuine dispute of material fact as to whether plaintiff was discriminated against due to his

9   disability regarding his ability to access an ADA compliant toilet while he resided on Cedar

10  North and Cedar South." *Id*. at 14.

11      In their Objection to the R&R, Defendants fail to address this conclusion. Instead, the

12  Objection focuses almost exclusively on whether the ADA requires them to replace the security

13  doors through which Plaintiff had to pass to access the medical unit toilet, and argues this

14  accommodation would be unreasonably burdensome. *See* Defs.' Obj. at 2 ("The

15  single recommendation Defendants object to is the recommendation that Defendants' Motion to

16  Dismiss the ADA claim regarding the security doors be denied."); *see supra*, n. 2. Defendants

17  ignore another possible accommodation that Plaintiff suggests: providing a staff member on a

18  timely basis to accompany Plaintiff to a toilet that he would be able to use.[5]

19      This Court, like the Magistrate Judge, makes no finding on whether such an

20  accommodation would be reasonable, or satisfy the requirements of the ADA (or indeed,

21  whether Plaintiff in fact had a disability that prevented him from accessing the toileting

---

[5] As the Magistrate Judge observed, Defendants failed to address this issue in their summary judgment briefing as well. *See* R&R at 16 ("Plaintiff's request includes [] an allegedly reasonable alternative method — having staff open the doors for him — but defendants do not address this.").

ORDER
- 8

facilities). But the Court also agrees with and adopts the R&R's conclusion with regard to Plaintiff's toilet-access claim, that "the record taken as a whole, in the light most favorable to the non-moving party, demonstrates a genuine dispute of material fact as to whether reasonable accommodations were provided and whether those that were requested but not provided would produce an undue burden." R&R at 16.

### 3. Plaintiff's Request for Injunction and/or Monetary Relief

Plaintiff seeks injunctive and monetary relief. The R&R concludes that even if Plaintiff prevails on his ADA claim related to access to a toilet, he is not entitled to an injunction. Since filing his claim, he has been moved out of the Cedar Unit, and the R&R concludes that he has failed to demonstrate that "the risk of future harm is concrete and particularized or imminent." R&R at 17. Plaintiff does not object to this sound conclusion, and the Court therefore adopts it; Plaintiff's request for an injunction is denied.

However, the R&R also concludes that Plaintiff has raised a genuine issue of material fact as to whether he would be entitled to monetary damages if he prevails on his ADA/toilet facilities claim. To demonstrate entitlement to damages on a successful ADA claim, a plaintiff must prove that the defendant acted with discriminatory intent. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998), as amended (Oct. 8, 1998); *see Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "To show intentional discrimination, this circuit requires that the plaintiff show that a defendant acted with 'deliberate indifference,' which requires 'both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that ... likelihood.'" *Updike v. Multnomah Cnty*, 870 F.3d 939, 950–51 (9th Cir. 2017) (quoting *Duvall*, 260 F.3d at 1139).

Citing the sworn assertions of Plaintiff and witnesses that Plaintiff submitted in support of

ORDER
- 9

his claim, the Magistrate Judge concludes that "[a] reasonable trier of fact could decide, based on this evidence, that the failure to provide accommodations for plaintiff to access an ADA compliant toilet was deliberate indifference rather than negligence." R&R at 19 ("Detainees attest that they witnessed plaintiff having to wait up to 45 minutes for staff to escort him to a toilet. The detainees observed multiple times plaintiff soiling his clothes with fecal matter waiting for staff to take him to a toilet he could use.") (citations omitted); *see also, e.g.*, Marshall Decl., ¶¶ 9, 10 ("I have personally been present when John Bettys spoke to Mark McFarlane about the toilet problems on Cedar North."). Neither Defendants, nor Plaintiff, dispute that a question of fact remains as to whether Defendants acted with deliberate indifference and discriminatory intent. The Court therefore adopts the R&R's conclusion, and denies Defendants' request for summary judgment on this issue.

## IV.    CONCLUSION

For the foregoing reasons:

The Court adopts the Report and Recommendation. Defendants' motion for summary judgment (Dkt. 44) is GRANTED IN PART and DENIED IN PART, as follows:

1. Defendants' motion for summary judgment is granted as to plaintiff's Title II ADA/RA claims regarding access to showers, and an accessible computer keyboard. These claims are dismissed with prejudice; and

2. Defendants' motion for summary judgment is granted as to plaintiff's request for injunctive relief, as the claim for injunctive relief is moot; and

3. Defendants' motion is denied as to plaintiff's Title II ADA/RA claims regarding access to toileting facilities; and

4. Defendants' motion is denied as to plaintiff's Title II ADA/RA request for money

1  damages related to access to toileting facilities.

2  The Clerk is directed to provide a copy of this order to the parties and to Judge Fricke.

3  DATED this 11th day of April, 2025.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER
- 11